The opinion of the court was delivered by
Manning, C. J.
Scott Watson, the elder, died in 1859, leaving a widow and three minor children, the youngest of whom died shortly afterwards. His estate was valuable, consisting chiefly of a cotton plantation in Tensas parish, and he owed no debts. The mother was confirmed as natural tutrix of the children, and an inventory was made *758 of the succession property. In 1860, she married John R. Weatherly, having first convoked a family meeting, which advised that she be retained as natural tutrix of her children, but that she must give a bond according to the requirements of law relative to dative tutors, and she accordingly executed a bond as tutrix in the sum of one hundred thousand dollars.
The two surviving children of the Watson marriage are a son, now called Scott, whose interdiction 'is now sought, and a daughter, Ida, now Widow Robert Weatherly. In 1866 these children-were taken to France» by their mother to complete their education. Scott was then about nineteen years old, and was a promising youth — ‘ the brightest boy in. school,’ says his cousin as a- witness — ' both mentally and physically sound,’ says another. Two years afterwards, he was brought home in a condition, as is now charged, of mental idiocy and imbecility, and has so remained ever since.
In 1878, the parish judge of Tensas, reciting that Scott Watson is afflicted with a permanent and complete idiocy, and subject to an habitual state of imbecility, to such an extent that he is now and has been for more than ten years entirely unable to take care of his person and property, and that he has real and personal property of great value as well as large sums due him from his mother, and whereas his interdiction has never been solicited by any of his relatives, whose duty was to institute proceedings to that end, and it is made the duty of the judge to pronounce the interdiction ex officio, it was ordered that cause be shewn why the decree should not be made, both by Scott himself, and by an attorney at law who was at once appointed to represent him. The proceeding is taken under art. 38á of the Oivil Code, and is as follows ; — If the person who should be interdicted has no relations and is not married, or if his relations or consort do not act, the interdiction may be solicited by any stranger, or pronounced ex officio by the judge after having heard the counsel of the person whose interdiction is prayed for, whom it shall be the duty of the judge to name, if one be not already named by the party. New No. 391.
E. H. Farrar, Esq., the counsel appointed by the court to represent the proposed interdict, answered by a general denial, and requiring proof of the judge’s allegations. About two weeks thereafter, Scott Watson answered through “ counsel appointed by himself,” as is stated therein, denying that there is any necessity for his interdiction, and praying, should the court decree otherwise, that he be placed under the curatorship of his mother. At the same time, the mother and sister intervened, the former alleging that for many years she has had charge of her son, taking care of him, and protecting him with the attention and solicitude which a mother alone can bestow, and that there is no *759 necessity for the appointment of a curator whereby she will be deprived of the care and supervision of his person. The sister reiterates her mother’s allegations, and charges that the proceedings are wholly unnecessary, and are the result of impertinent and officious intermeddling by outsiders, who have no interest in the matters involved. She further avers that she is her brother’s presumptive heir, as her mother is his forced heir, and she desires the appointment of her mother as curatrix, if one be deemed necessary.
Upon these pleadings the case was tried, and judgment of interdiction was pronounced.
We have heretofore had occasion to consider the difference between idiocy, imbecility, and insanity, and to define these three mental conditions. Francke’s case, 29 Annual, 302. Insanity is not attributed to the subject of the present proceedings. His interdiction is demanded because of idiocy and imbecility. The allegation is, that he is “ afflicted with a permanent and complete idiocy, and is subject to an habituaj state of imbecility.” It is very clear that he is not an idiot. Idiocy is marked by congenital deficiency of the mental faculties, says a. writer on this subject. 2 Taylor’s Med. Jurisp. 502. The first appearance of mental lesion was about the time he had attained majority, and while pursuing his studies in France, with the same promise of a brilliant future that his school-fellows had noticed in his early youth. The cause for the interdiction must be imbecility.
Two physioians were appointed to examine him. One of them had never conversed with him ‘ before yesterday,’ the day of the examination, which lasted an hour and a half. He describes him as very weak both in body and mind, having comparatively no mind, and would suppose from the nature of the disease, that he would at times be violent, although that form of the disease is not so apt to produce violence as some other forms — thinks he would only be violent when irritated or interfered with — the disease is rather an atrophy of the mind than melancholia, and is incurable. The other physician had known Watson longer — dressed a wound in his hand once, but had little or no conversation with him at the time, and consequently could form no idea of his mental condition, and this was the extent of his intercourse with him until the examination of ‘ yesterday’ — says he was quiet on both occasions, and judging from his condition yesterday, should think he never had mind enough to take care of his person and property. The first physician says that Watson has not now mind enough to take care of his person or property. They both join in a formal report that Watson has that form of insanity described in medical jurisprudence as dementia.
It is manifest that if the necessity for interdiction rests solely upon the testimony of the two medical experts, no sufficient cause is shewn *760 for a decree which entails such serious consequences upon the subject of it. Neither of them had had opportunity to test the mental condition of the imbecile. Neither of them had ever conversed with him except during the examination of the previous day, and the opportunities for forming an opinion upon one’s permanent mental condition, which often displays deceptive manifestations, were conspicuously meagre.
Other testimony is in the record, from which we gain much information of his condition. Mr. Clinton, an intelligent lawyer, speaks from knowledge of Watson in his earlier youth, and before there was any mental lesion, as well as from personal observation of him since. The mother and sister also testified. We gather from the evidence that Watson is in the same condition as was Mrs. Erancke. Early after his mental disturbance was manifested, he was submitted to the late Dr. Warren Stone for examination, who advised that restraint of any kind should be avoidéd, and the largest liberty allowed to him. This course was pursued, and with apparent benefit. He ate with the family — slept in a chamber adjoining his mother’s — had perfect freedom of action, and required only the supervision that a child does. The only vicious or violent propensity he exhibits is cutting his clothes, but he is tractable and never wild. Some years after Dr. Stone’s examination, he was placed in a Retreat near Baltimore, but was removed therefrom by the advice of the physician in charge of it, who saw that even a partial restraint was hurtful, and commended Mrs. Weatherly to renew her former personal supervision and control of him. Last summer he was sent to a place in Mississippi in the highlands, and remained until late in the autumn, and returned in better condition than he has exhibited since his malady began. Everywhere he manifests a very warm love for his mother, and submits himself readily to her direction. “ It would be more than cruel, says the sympathetic sister, to take him away from her. It would be death.”
The matter for our decision now is, not whether he shall be taken away from his mother, but whether he is in that condition which requires the interposition of a court to pronounce his interdiction. We do not think he is in such condition.
The case is almost a complete parallel to that of Mrs. Erancke. The malady of both is the same. Neither is able to take care of his person or of his property. Restraint, if prolonged, would unquestionably in either case produce dementia, and the experiment, tried with both, exhibited the same result.
We infer from a part of the testimony, that the fact that neither Mrs. Weatherly nor her husband had ever filed an account of Scott and Ida Watson’s property and revenues, is supposed to create the necessity for interdicting the former. As a consequence of this, and to rebut the *761 presumption of mal-appropriation or mismanagement of the property, it is in evidence that the property is managed with unusual skill and judgment, and it is worthy of remembrance in this aspect of the case that his sister, who has the same interest in the property, does not call for an account, nor allege misappropriation of its revenues, and she, her mother, and the half-brother of the second marriage are the heirs of Scott, and the only persons who could be injured by wasting his revenues, or deteriorating, or injuring his property. If it were otherwise, we should hesitate before pronouncing a sentence, which might incalculably affect the proposed interdict for worse, and could not ameliorate his physical or mental condition. If the lessons of experience, taught by subjecting him to different modes of treatment, and the advice and opinion of those physicians, in whose care he was placed with the special view of ascertaining what was necessary for his well-being, are to be considered, we must conclude that he is not labouring under insanity (which indeed is not charged in the pleadings) but rather that he is afflicted with a permanent feebleness of intellect, which only requires uncongenial treatment to be developed into dementia.
This subject is attracting a large share of the attention of philanthrophists and legists now, and courts are proceeding in such matters with more caution and circumspection than formerly. We perceive no good reason for interdicting this unfortunate man. His person could not be better cared for than it now is by his mother. His property seems to be so little in danger that his co-heir, equally interested with himself, is satisfied with its present management, and those who will inherit it upon his death, are making no complaint. Therefore
It is ordered, and decreed that the judgment of the lower court is avoided and reversed, and that there be now j udgment in favour of the defendant and intervenors, the costs of appeal to be paid by the defendant.